In with our third case, United States v. Burns. Ms. Harvey. Good morning, your honors. May it please the court. This case basically boils down to the definition of relevant conduct under the guideline range and how far that stretches. From a policy standpoint, the further relevant conduct stretches, the more it becomes a deterrent to defendants from challenging anything within the PSR for fear of jeopardizing those precious three acceptance of responsibility points that the government recommends. Although that's going to be the choice confronting anyone facing a plea deal. Absolutely. Judge Duncan, that is correct. What's unique in this case is the fact that what was challenged was the mens rea element of the cross-reference conduct. The offense conduct in this case was a felon in possession of a firearm. On February 9th, Mr. Burns was arrested in his car with a firearm. He was arrested with a Rossi .357 and he was a convicted felon. Those two elements make it so that he was able to meet the elements of being a felon in possession. So at the end of the road, are we talking really here simply about whether there was an error in not assigning a three-point reduction for acceptance of responsibility? I want to know what exactly you're looking for. It's the overturn, the refusal of the district court to assign the three-point reduction for acceptance. That is absolutely correct, Your Honor. So that's what's at the end of the line. That is, Your Honor. The district court's withdrawal of the three points for acceptance was based on the defendant's challenge of whether he possessed the requisite mens rea for the cross-reference conduct of attempted murder. Now, the facts that gave rise to the cross-reference conduct occurred on February 2nd. He was arrested February 9th. So seven days before the defendant, the appellant in this case, approached the vehicle with the same Rossi .357 that he was later convicted of possessing, he shot into an occupied vehicle. Those are not facts that were challenged. What was challenged at the sentencing hearing was whether he possessed the intent to meet the cross-reference conduct for attempted murder. We submit that it was not a denial of relevant conduct. Now, I'll follow you as you're going. What was the factual evidence that supported, in the government's view, the mens rea? The factual evidence in the government's view was a statement by the defendant's ex-girlfriend that he had said prior to exiting the vehicle that he intended to kill the driver of that vehicle. All right. That was a fact. That was a fact that was contained in the PSR. Right. And did your client testify that that fact was not true? My client did not testify. Did not testify. Did not testify. So he didn't dispute that he said that? Judge Gregory, you raise an interesting point because we asked the government to present the witness testimony so that my client would have the opportunity to cross-reference her version of what occurred. All right. My client did not take the stand and state affirmatively that he did not say that. He believed that he had not said that and wanted the opportunity to examine the witness who said he said it. And so from that standpoint, while we were challenging one of the facts in the PSR. Right. And how did you challenge it? We challenged it by asking the government to bring the witness in so that we could cross-examine that witness because the government does have the burden of showing the application of the cross-reference by a preponderance of the evidence. So your position is that you only put them to the proof, but you never positively objected or said that fact. The statement, the motherfucker statement, right? That's correct. That is the statement, Your Honor. Right. That's what he says, the fact. So you never said that was not true? In order for us to make that assertion, I would have had to put my client, the defendant, on the stand. And that was a choice that he made. He made a decision not to take the stand. You're correct. We did not. So you did not. So your real defense is that you never disputed a factual aspect of the case. That's correct. Could I clarify? This may just be my confusion. Are you today challenging whether the February 2 conduct was relevant conduct for sentencing purposes? We believe that. It really, really, really is a yes or no question. I just want to make sure I understand your argument. Are you arguing, is that your argument today, that the February 2 shooting was not relevant conduct for sentencing purposes? You're not arguing that? That is not our argument. Thank you. That is not our argument. Our argument is that whether the defendant possessed the mens rea to meet the requirements for attempted murder as a cross-reference on February 2nd, that our challenge to that was not a dispute of relevant conduct. And therefore, the district court's withdrawal of the acceptance of responsibility points on that basis was an error, because all we did was challenge whether the guidelines applied to the facts at hand. That was our challenge. It was not a repudiation of relevant conduct, as it has been colored by the court below. Thank you. Everything that really constituted the relevant conduct, you conceded it. That's correct. That's correct. There's no dispute that Mr. Burns fired the firearm into the vehicle. There's no dispute on February 2nd. Isn't the acceptance of responsibility subject to a clear error standard? Acceptance of responsibility, whether the facts support that, is a factual determination by the district court, as I understand it. Our argument here today goes to the district court's interpretation of whether our challenge constituted a dispute of relevant conduct, whether it falls within the circle of relevant conduct, if you will. I'm not sure if that answered your question, Judge Wilkinson. I'm wondering whether the acceptance of responsibility doesn't depend on an overall assessment of whether a defendant has really accepted responsibility for what was done, and whether the district court was able to say that, all right, you can challenge whether it was an attempted, you know, whether it was an aggravated assault or whether it's an attempted murder. I think that the evidence here is very, very strong that it was an attempted murder based primarily on Brittany Wilson's testimony. And I don't feel like the defendant has really owned up to something that seems to me from the evidence is very much an attempted murder, taking a loaded revolver and shooting a bullet into a car with four people in the car. And at the sentencing hearing, as I understand it, maybe there was an opportunity to accept some responsibility for the act during allocution or whatever, but the district judge had the overall sense that the defendant was not taking responsibility for what was a very, very serious act. I think the district, my understanding of the district court's findings was that while there were other facts that supported her finding, she was applying the, her determination of whether attempted murder was the proper cross-reference was based on the other facts. That is true. Those other facts were not facts that the defendant disputed at the sentencing hearing. There was no dispute as to the fact that he fired a gun into a car, and at the time he fired the gun, there were three people in the car, the front right seat passenger having already exited the vehicle. What she did was take the evidence provided by Brittany Wilson and deduce from that that the defendant was trying to kill Poogle at the very least and shot into a car with four people. And I see nothing here before me to indicate that the defendant has accepted responsibility for what I think was an attempted murder of Mr. Poogle. I mean, that's the overall sense I got from what the district judge did. I think that comes back to the central question of whether the attempted murder as an offense is part of the relevant conduct. The attempted murder, whether the facts support attempted murder is a determination as to a cross-reference. So we start with the guideline range for being a felon in possession. Then, because the gun was used in commission of another crime, we cross-reference to other attempted offenses. What constitutes that other attempted offense, that's a question of law that I believe the district court had to interpret. How often have we reversed district judge determinations of acceptance of responsibility? I do not have the exact statistics, but I believe it is very, very rare. It's very, very rare. And a district judge in sentencing, one of the things we constantly try to do is not picket district courts on sentencing determinations because it's a less formal process than trial. And appellants continually try to make issues of law out of everything. And my question is, I don't know why it isn't just a simple, straightforward factual call subject to a fairly erroneous standard of review where the district judge said, I've listened to the testimony here. I think he was trying to murder Mr. Poole. He was shooting into a car with four people in an attempt to get Mr. Poole. And I don't see any evidence before me that he's accepted responsibility for the act. And that's a judgment call. You can disagree with it, but I'm not sure it's a matter of law. I mean, we get to the point that district judges can't lift a finger without creating an error of law. I believe that. I understand your point. Here, however, we have a very different issue, which is whether if you challenge the mens rea for an uncharged offense, it's an uncharged cross-reference conduct. From our standpoint, it's a clear question of law as to whether challenging an element of an uncharged cross-reference. What I'm asking you is, isn't the question broader than that? It doesn't have to hinge on that. It doesn't have to hinge on whether this was relevant conduct or not, or whether Brittany Wilson was cross-examined or not. It just has to hinge on the fact that this is the act that was done. I've listened to the testimony here. I think it was an attempted murder. I don't see any evidence before me that the particular defendant has accepted responsibility for what was a very heinous act. And I'm going to deny the acceptance. Now, we can try to make it an issue of law by talking about cross-examination and relevant conduct, but sometimes things are simpler than that. I think that the acceptance of responsibility goes to, as I understand it, the offense conduct. And we start with the offense conduct. There was no challenge as to whether he accepted responsibility for possessing the firearm, for being a convicted felon, and then for the events on February 2nd. There was no question that he accepted the fact that he had shot into that vehicle and that he had the firearm. So from that standpoint, those are facts that are accepted. So if relevant conduct is interpreted in terms of what could— Well, let's begin in terms of the indictment. The indictment was talking about February 1st or February 9th or whatever, and the particular act here, of course, was within the dates set forth in the indictment. That's correct, Your Honor. Yes, I do. I think you make a good argument that the question of whether disputing mens rea for purposes of the cross-reference is a question of law. But what is—why would you argue—what's your basis for arguing that, given that we found that disputing the state-of-mind element of the offense of conviction, why wouldn't that equally be true for what you do not dispute is relevant conduct? Why would we draw that distinction, since it is relevant conduct? And it is a basis of informing sentencing decisions. Why treat it differently? I'm sorry. Could you rephrase your question? Sure. State-of-mind is—contesting state-of-mind in an offense of conviction is enough to warrant a denial of the downward adjustment for acceptance of responsibility. Are we okay there? Yes. Okay. So why is—why would the rule—why would it be any different in the context of challenging the state-of-mind with respect to what you don't dispute is relevant conduct? Why would the analysis, in terms of acceptance of responsibility, be any different? The analysis is different because that's uncharged conduct and— but it's already being taken into—I mean, but it would—the problem, then, as I think you're articulating it, is considering uncharged behavior as relevant conduct. But it is. You've gotten over that hurdle. So why not—once the uncharged conduct is considered relevant conduct, why wouldn't challenging an element of that be analyzed just as—for purposes of—I know this is a long question—for purposes of denying acceptance of responsibility as it is with the offense of conviction? The difference is that the uncharged conduct, what it constitutes, it's unformed. So when you challenge the mens rea, whether it's attempted murder or aggravated assault, what that conduct fits, that's something that's at issue. So the difference is when you have the offense of conviction, you know what that is and you know what the elements are. With uncharged conduct, it's a string of facts that need to be strung together and— And the problem with your response is then you've gone back into the territory of factual dispute. I think the dispute would be the application of—yes, your application of— Well, isn't your real—the real response to, I think, Judge Duncan's question, I think you articulated, is that when you plead guilty to the offense, all those elements are there. And every element, as Judge Duncan says, you can't contest it and you don't contest it. But as to cross-reference relevant conduct, the only question is conduct, not all the elements. And the point is you don't dispute the conduct. But it's absolutely correct, Your Honor. Exactly. The question now, what does that conduct constitute, is a fair question that you put them to their proof. But it'd be different if you said, no, no, no, I never shot into that car. That's not—it's conduct that you're looking at. And he didn't contest conduct. I think that's the argument. Otherwise, you'd be like, everything they'd come up with. And they would come, oh, oh, oh, you did it, yes, I did do that. Did the court ask him, did he intend to kill someone? The court did not ask him. Right. The court should have asked the question. If it was their concern. Did you try to kill someone when you—that was asked, was it? That was not, Your Honor. Right. Okay. Go ahead. Thank you, counsel. Thank you. Good morning, ma'am, police, court. Listening to the court's questions, I think the consideration first is as conceded by the appellant, we do have relevant conduct here in discharging the firearm. That came as no surprise, considering it was both, as Judge Wilkinson noted, covered in the period of a time in the indictment, covered in the factual basis. That allegation was specifically in the factual basis to which the defendant acquiesced when he entered his plea. The question is, looking at that cross-reference, that cross-reference is not solely to an act.  And if we look at the definition of relevant conduct under the guidelines, it is not merely acts and omissions, which are, I think, the first two paragraphs. We can continue down, as the government cited in this brief, it includes any other consideration contemplated by the applicable section under A-4. What you're saying is that you can't split off, with relevant conduct, you can't split off the actus reus from the mens rea. That's correct. That, you know, a crime is a combination of an actus reus and a mens rea. And just because you're not, just because you're not contesting the actus reus doesn't mean that you aren't contesting the mens rea. That's correct. A district court can look at it and say, I'm not contesting, he's contesting the mens rea. I think it's very clear that the evidence before me shows that this was a murder. And I don't think it's plausible to contend that, in light of Ms. Wilson's testimony, in light of the animus between this individual, Mr. Burns, and Mr. Poole, that this was anything other than a murder. I'm trying to deny it. And that's denying the crime. And it's squarely covered by our Elliott precedent, which is that a denial of relevant conduct is not consistent with acceptance of responsibility. And Elliott doesn't make a distinction between the actus reus and the mens rea. He's still denying it. And I think that's correct. When was it denied? He denied both his state of mind and the statement he made. Did he testify? He did not. When did he do that? I'm asking you, when did he do that? Yes, Your Honor. When did he deny? Both in the position paper, the colloquy before the sentence. I'm not asking about the paper. I'm just asking, when did he deny? That's all. When did he deny? Are you saying the defendant did not testify? When did he deny? You made a statement to the court that he denied it. I'm asking you, plain language. Yes, sir. When did he do that? Yes, Judge Gregory. At the appellate's brief at page five and six, his conduct before the sentence scene was characterized as follows. Defendant challenged the veracity of the state attributable to him. So his counsel did that? With him sitting there, yes, Your Honor. With him sitting there, his counsel did it. He didn't do it. So you're saying that, was that ineffective in the system? No, but I think ultimately he loses on the question regardless. The question is, as to it relates to acceptance of responsibility, he, through his counsel, said, I didn't make that statement. That statement didn't come as a surprise. That statement was some third-party conspirator who had a deal with the government. This was his fiancee who was sitting in the car beside him as he stepped out and made the statement before he approached the car. And to say, I think to a trial judge below, we are challenging the veracity of what she says, and to say it before this court, is clearly a denial. I don't know how else we would couch that unless you say the defendant is never denied unless he specifically says something on the stand or through the colloquy. Also, if we look at Judge Eagle's kind of approach to this case, she also finds that the denial was not only a false denial, but it simply was not, it was frivolous. It was not reasonable at all. He links his denial of his state of mind, and it's at principally the colloquy is at page 69 through 73, by saying repeatedly, the government has to show my intent. The government hasn't shown my intent to commit any bodily harm. And interestingly, at page 73, my intent was to shoot an empty passenger seat through counsel. The intent was to give a warning shot. Counsel said all these things. He didn't say any of that. That's correct. So you're saying his counsel put him in jeopardy with that. Well, his counsel. Right? You know what you're saying? I'm saying his counsel, presumably with some conversation with the client. There's no evidence that, that's not in evidence, that you're saying that counsel put all of that in jeopardy, because he didn't testify to that. Correct? No, there was no testimony. And counsel knew that the acceptance of responsibility was a big part of this, getting that reduction, correct? Counsel was aware, yes. As a matter of fact, you warned counsel, didn't you, on the record? You said, now, are you saying you'll proceed this way? Because if you do, then we're changing our view. Did you say that? I did, yes. You told counsel that, didn't you? I did. Before she did that? Yes. All right, go ahead. And if you look at, when you say what the defendant said, understand, I think, also, what the defendant said is captured in the PSR as well. So, in the PSR, you have a recitation of what the defendant's statements were to the police. Attached to the government's position paper was a copy of the actual statement. So, defendant was, on record, to the extent, although not at the sentencing hearing,  and discharged into the car. So, it was not as if there was no forecast at any point as to what the defendant's position was on this particular point. Aren't the statements of counsel attributable to the defendant? They are always, and I think usually are, yes. And here, the judge considers not only, as you suggested, Judge Wilkinson, the totality of the circumstances before me. This court has repeatedly and routinely deferred to the trial judge looking at all the things that are transpiring. And, as we put in our brief, the court utilized the word very strong very four times to say that there is really not any question under these circumstances what took place. And by, understand that his denial of the statement that I'm going to kill you is directly linked to his, what the court, I think, deemed as a frivolous argument, that I'm really just firing a warning shot. That that wasn't... Is it... No, go ahead. Does it matter so much about mens rea, have we not held that discharging a firearm in a manner that is likely to injure people, whether even unintentionally is criminally negligent? In fact, I think I recall writing an opinion that said that. Yes, this court has held that, and as have other courts, that under these circumstances, considering malice as the element, discharging a firearm in these circumstances into an occupied vehicle would clearly qualify for that enhancement, the cross-reference to it. So that it was ill-advised to even challenge it here, wasn't it? I'm sorry? It was ill-advised to even challenge the enhancement, the cross-reference, wasn't it? Well, I think it was so very strong that it was going to be found regardless. Obviously, the colloquy with the defendant at the beginning of this case is, have you seen the PSR, have you discussed it with your counsel, have you discussed the way forward? The defendant obviously articulates. And I think that goes, Judge Gregory, to this question of acceptance of responsibility, the fact that that took place while he was sitting there, the challenge to the veracity of the witness, the frivolousness, for lack of a better word, of saying, I really intended to fire a warning shot, certainly goes into a court's calculation as, have you fully accepted the facts? When asked by the court, do you have anything to say? And the defendant responds with a single word, no. Does the defendant really meet his burden to show that he is entitled to acceptance of responsibility when perhaps there's another route? I was scared. I really have had trouble in my life. Why do you think the court didn't ask the question? He's standing right there. She could have asked the question. She certainly could have. Wouldn't that have been the best way to do it? I mean, I can't understand why they make law this incredible mystery. Once you plead guilty and you try to assess whether or not the person accepts responsibility, you have Brittany here, a lady comes up, well, just ask him what he said. Sir, you heard what she said. Do you deny that you tried to kill him? Never did, correct? Did not. And I guess one might argue that these facts didn't mean to. It was so crystal clear under the circumstances that. That's why my point was it was clear that you were just jeopardizing the reduction in acceptance of responsibility points by frivolously doing it, wouldn't it? Wouldn't you agree with that? It was certainly a consideration, but I'm not going to concede that counsel was ineffective. Ultimately, counsel has hard choices to make after conversations with their clients. You just said it was clear and frivolous. I mean, it's just that it was clear that it was. I think Judge Duncan's question was what he admitted to alone was enough. It was certainly, I think, under the circumstances. There are no other questions by the court. Thank you, sir. Here's some rebuttal time. Thank you, Your Honors. Counsel, did you negotiate this plea? I did, Your Honor. And you knew that relevant acceptance of responsibility was very important for your client, correct? That is correct, Your Honor. I think in just touching on the negotiation of the plea and the aggressive stance that the government took with respect to challenging the acceptance points, the timeline of events is somewhat important. The plea was entered on May 9th of 2013. Sentencing was sentenced on that day for August 22nd of 2013. Could you give some thought to just having at sentencing the defendant come up and say, you know, what I did was wrong and I accept responsibility. It happened. I never should have done this. I mean, there was a way to get those three points. That's correct, Your Honor. That's a decision that, without jeopardizing privilege, that was made at that point. The district judge characterizes the attack on Brittany Wilson as very frivolous. But, I mean, there is a way to get acceptance of responsibility and that is to accept responsibility. With all due respect, my client never denied any of the acts or omissions that occurred between February 1 and February 9. Going back to the timeline of the events that happened here, Mr. Burns submitted his position paper on sentencing on July 23rd, 2013. Nothing was heard from the government until August 19th of 2013, when the government moved to continue sentencing so they could locate and subpoena witnesses. On the very next day, the judge denied that continuance, August 20th. The judge denied the continuance, saying that the government had had a month to prepare. On that same day, that's when the government filed its position paper indicating that it was going to strip the defendant of acceptance of responsibility points or request that of the judge if the challenge went forward. Ms. Harvey, I think what the question may be going to and it may be impossible for you to answer consistent with privilege, but as I read it, it did seem as though the government said, you do go forward with this challenge at some peril. So there had to be some considerations weighing of pros and cons taking place to make the decision to go forward. Without jeopardizing privilege, you are correct. There were discussions, even though the government system came in. You knew your client was not going to take the stand and directly say he didn't make that statement, didn't you? My client did not want to take the stand. No, no, but you knew he was not going to take the stand before you engaged in that. That's correct. Right. So you knew very well that you would have nothing to dispute what she said. That's correct. Before you went forward, though. Yes, that's correct. And the gist of our argument and what we sought to do was to ensure that the facts as they were presented in the PSR were sufficient to meet the standards for the reference context. But the point, though, is that if you forget about the privilege part of it, you tell a client, listen, are you going to testify? For whatever reason, you're not going to testify. Well, listen, if she's going to say this, if you don't have anything to oppose that, then you're going to lose your points, your reduction, because there's nothing to oppose it. You knew that, right? That is correct. And yet you went forward, and exactly what the prosecution, the government told you was going to happen, happened. You lost the reduction, and that was the best thing you had in the plea agreement. That's correct. Okay. That's correct. It is ultimately the defendant's, Mr. Burns' decision, I guess, your response to that. Let Judge Duncan finish the question. Whether to mount the challenge even against your advice, would it be his decision? It would be Mr. Burns' decision. The client always has the option. But you're not saying you told him not to do that. I can't disclose what I did or did not say to the client. That's what I'm saying. You're not saying that. I'm not. You're just not saying one way or the other. I'm not saying one way or the other. But you knew he was not going to testify. I did know he was not going to testify. Did you have a sidebar with him before doing this? Did you take a recess to talk to him? We had met once the government filed their position paper, two days before sentencing. Two days before. I want to say that I do respect your desire not to go into the discussions that you had with your client. I think all of us would feel that that's a very appropriate thing for you to do. This isn't, at least for me, an occasion to go into the interchange that agrees between you and your client. I think there are all kinds of privileges here. I think there's a lawyer-client privilege. I think there's a privilege involved in not taking a stand. And I don't want to push too far on those because I think we get into very sensitive territory. I agree, Your Honor, and I appreciate that. Well, we certainly do thank you. And we'll come down and greet counsel. And then we will head into our final case for this morning. Thank you.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Allyson K. Duncan